**21-2317**

# United States Court of Appeals

*for the*

# Fourth Circuit

RICHARD ALVAREZ; SADIQA BROWN, and all others similarly
situated,

*Plaintiffs/Appellants,*

— v. —

SECRETARY XAVIER BECERRA,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## OPENING BRIEF OF APPELLANTS

CHRISTOPHER H. BONK
ALEXIS N. TSOTAKOS
GILBERT EMPLOYMENT LAW, PC
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
T: (301) 608-0880
atsotakos-efile@gelawyer.com

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-2317_    Caption: _Richard Alvarez, et al. v. U.S. Department of Health and Human Service_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Richard Alvarez, et al._
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Alexis N. Tsotakos          Date: 12/7/2021

Counsel for: Appellant

**Print to PDF for Filing**

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Authorities ............................................................................ ii

Jurisdictional Statement ...................................................................... 1

Statement of the Issues ........................................................................ 1

Statement of the Case .......................................................................... 1

Summary of the Argument .................................................................... 4

Argument ............................................................................................. 5

    I.  Standard of Review ..................................................................... 5

    II. The District Court Erred in Dismissing Plaintiffs' Appeal for Lack of
        Jurisdiction ................................................................................. 6

        a.  The Deprivation of Plaintiffs' Hearing is Fairly Traceable to the U.S.
            Department of Health and Human Services .............................. 6

    III.The Delay In Obtaining a Hearing Has Risen to a Level of a
        Constitutional Deprivation ......................................................... 16

Conclusion ........................................................................................... 21

Certificate of Compliance

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984) ........................................................................... 13

*Baker, Jr. v. Dep't of Commerce*,
2021 MSPB LEXIS 353 (Jan. 27, 2021) ............................................ 9

*Bennett v. Spear*,
520 U.S. 154 (1997) ........................................................................... 15

*Block v. Meese*,
793 F.2d 1303 (D.C. Cir. 1986) ....................................................... 15

*Brock v. Roadway Express, Inc.*,
481 U.S. 252 (1987) ........................................................................... 17

*Butz v. Economou*,
438 U.S. 478 (1978) ........................................................................... 20

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .............................................................. 14, 16, 17

*Cunningham v. Dep't of Defense*,
2021 MSPB LEXIS 502 (Feb. 5, 2021) ............................................. 9

*Davis v. SEC*,
554 U.S. 724 (2008) ........................................................................... 15

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
931 F.3d 269 (4th Cir. 2019) ............................................................. 5

*Department of Commerce v. New York*,
139 S. Ct. 2551 (2019) ............................................................... 14, 15

*Doe v. Obama*,
631 F.3d 157 (4th Cir. 2011) ..................................................... 12, 13

*Douglas v. Veterans Admin.*,
5 M.S.P.R. 280 (Apr. 10, 1981) .......................................................... 18

*FDIC v. Mallen*,
486 U.S. 230 (1988) .......................................................... 4, 7, 16, 17

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) ............................................... 6

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
204 F.3d 149 (4th Cir. 2000) ............................................... 6

*Haury v. Dep't of Agriculture*,
2020 MSPB LEXIS 1154 (Mar. 20, 2020) ............................ 9

*Jacobson v. Florida Secretary of State*,
974 F.3d 1236 (11th Cir. 2020) .......................................... 11

*Jones v. City of Modesto*,
408 F.Supp. 935 (E.D. Cal. 2005) ....................................... 17

*Kadlec v. Dep't of Army*,
49 M.S.P.R. 534, 539 (Jul. 29, 1991) ................................. 18

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
422 F.3d 490 (7th Cir. 2005) ......................................... 6, 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................ 6

*Libertarian Party of Va. V. Judd*,
718 F.3d 308 (4th Cir. 2013) ............................................... 6

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......................................................... 16

*Lucia v. Sec. & Exch. Comm'n*,
138 S. Ct. 2044 (2018) .............................................. *passim*

*Malley v. Briggs*,
  475 U.S. 335 (1986)............................................................................ 8

*Mathews v. Eldridge*,
  424 U.S. 319 (1976).......................................................................... 16

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1975)............................................................................ 13

*U.S. v. Timms*,
  664 F3.d 436 (4th Cir. 2012) .......................................................... 16

**Rules, Statutes, and Other Authorities**

5 U.S.C. § 5372.................................................................................... 19

5 U.S.C. § 7512(1) ............................................................................... 1

5 U.S.C. § 7512(4) ............................................................................... 1

5 U.S.C. § 7521(a) ............................................................................. 20

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1331 .................................................................................. 1

Fed. R. Civ. P. 12(b)(1)........................................................................ 5

74 Fed. Reg. at 32174 ........................................................................ 12

## Jurisdictional Statement

Plaintiffs filed a class action complaint against their employer, the U.S. Department of Health and Human Services ("Agency," "DHHS") in the United States District Court for the District of Maryland, which held jurisdiction under 28 U.S.C. § 1331. The District Court ordered the case dismissed and for the Clerk to close the case on September 23, 2021. Appx214. Plaintiffs filed a timely notice of appeal on November 19, 2021. Appx215. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## Statement of the Issues

(1) Whether DHHS violated plaintiffs' due process right to a post-deprivation hearing.

(2) Whether the deprivation suffered by plaintiffs is fairly traceable to DHHS.

(3) Whether the lower court erred in granting Defendant's Motion to Dismiss and dismissing the case for lack of jurisdiction.

## Statement of the Case

Plaintiffs Richard Alvarez and Sadiqa Brown worked for DHHS dating back to 2009 and 2001, respectively. The Agency demoted Mr. Alvarez through a reduction in pay within the meaning of 5 U.S.C. § 7512(4) effective October 28, 2018, resulting in a reduction in Mr. Alvarez's job duties, grade, and compensation. Appx150. The Agency removed Ms. Brown from federal service within the meaning of 5 U.S.C. § 7512(1) on July 19, 2019, thereby terminating her employment. Appx161. Following these adverse actions by the Agency, both

Mr. Alvarez and Ms. Brown ultimately filed timely appeals to the MSPB. Mr. Alvarez appealed on November 9, 2018. Appx164-171. Ms. Brown appealed on June 1, 2020, following a final decision by the DHHS Office of Equal Employment Opportunity ("EEO") on her complaint of discrimination. Appx172-178.

On August 19, 2019, the Agency filed its first Motion for Reassignment to Properly Appointed Administrative Judge or Dismissal Until a New Board is Confirmed. Appx30-34. Relying upon the U.S. Supreme Court's decision in *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044 (2018), the Agency argued that in the absence of any Senate-confirmed Board members, MSPB administrative judges lack the delegated authority required to adjudicate appeals of adverse employment actions. *Id.* That same day, the MSPB administrative judge issued an Initial Decision dismissing Mr. Alvarez's appeal without prejudice. Appx35-44. The Initial Decision indicated that the MSPB would automatically refile the appeal 180 days from the date of the decision. Appx36.

On February 18, 2020, the MSPB automatically refiled Alvarez's appeal. On February 21, 2020, the Agency again filed a Motion for Reassignment to Properly Appointed Administrative Judge, which Mr. Alvarez opposed. Appx45-49. On May 15, 2020, the MSPB again dismissed Mr. Alvarez's appeal without prejudice, for automatic refiling 180 days from the date of the decision. Appx50-60. This cycle of Agency motions on *Lucia* and subsequent dismissals without

prejudice has continued unabated since the Agency's first *Lucia* motion on August 19, 2019. Appx30-65, 70-80, 182-91. Each of the MSPB's dismissals without prejudice have been based upon the Agency's motions. Appx35-44, 50-60, 70-80, 91-100, 182-202. Since filing his MSPB appeal, Mr. Alvarez has waited over three (3) years and still has not received a post-deprivation hearing following his demotion.

Likewise, on June 4, 2020, the Agency filed its first Motion for Reassignment to Properly Appointed Administrative Judge or Dismissal Until a New Board is Confirmed and Suspension of Filing Deadlines Until This Motion is Decided in Ms. Brown's appeal, raising the Court's decision in *Lucia* to argue that MSPB administrative judges lack the delegated authority to adjudicate appeals of adverse employment actions. Appx81-85. In response, the MSPB administrative judge issued a first dismissal without prejudice on July 8, 2020. Appx91-100. Since filing her MSPB appeal, Ms. Brown's case has been subjected to three rounds of dismissal as a result of the Agency's motions; Ms. Brown has waited over one and a half years for a post-deprivation hearing on her termination following her appeal to the Board. Appx91-100, 192-202.

Plaintiffs filed a complaint with the U.S. District Court for the District of Maryland on September 11, 2020, alleging that the Agency's actions against Mr. Alvarez and Ms. Brown, and others similarly situated, in denying or indefinitely

delaying post-deprivation hearings required by law, violated Plaintiffs' property interests in their employment, without due process in violation of the Fifth Amendment of the U.S. Constitution. Appx6-20.

The Defendant filed a motion to dismiss, to which Plaintiffs opposed, and Defendant filed a reply. Appx4. Plaintiffs were granted leave to file a supplemental opposition to Defendant's motion to dismiss and did so. *Id.* The district court dismissed Plaintiffs' appeal for lack of jurisdiction, concluding that the denial of Plaintiffs' right to a post-deprivation hearing was not fairly traceable to DHHS. Appx203-214. Plaintiffs filed a timely notice of appeal. Appx215.

## Summary of Argument

The district court erred in dismissing Plaintiffs' appeal for lack of standing. The Agency has continued to delay Plaintiffs' access to post-deprivation hearings for such substantial lengths of time that, pursuant to the factors outlined in *Mallen*, Plaintiffs have been denied their constitutional due process rights to a post-deprivation hearing.

This ongoing denial of Plaintiffs' post-deprivation hearings is a product of the Agency's repeated filings of motions for reassignment or dismissal, asserting that the MSPB administrative judges assigned to Plaintiffs' appeals lack the authority to adjudicate those appeals under the Supreme Court's decision in *Lucia v. Sec. and Exch. Comm'n*, 138 S. Ct. 2044 (2018). *See* Appx30-34, 45-49, 61-65,

81-85.  Pursuant to and citing the Agency's motions, each of Plaintiffs' appeals is then dismissed without prejudice.  *See* Appx35-44, 50-60, 70-80, 91-100, 182-202.  As the impact of *Lucia* on the MSPB is currently under interlocutory appeal to the MSPB, and where the MSPB cannot decide that appeal where there remains no quorum of Board Members, there is no end in sight to the suspension of processing of Plaintiffs' appeals.

This ongoing preclusion from access to a post-deprivation hearing is fairly traceable to the Agency where the core deprivation of property is the Agency's own personnel actions against Plaintiffs.  *See* Appx150-155, 161-163.  Further, the MSPB does not implement continued dismissals without prejudice on these grounds *sua sponte*, but for a period of years has only done so upon motion by an agency.  *See* Appx35-44, 50-60, 70-80, 91-108, 179-202.  The Agency's motions have a clear, predictable effect that does not occur absent the Agency's motions, and this causation is sufficient for traceability to Plaintiff's injuries.

## Argument

### I.  Standard of Review

This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 274 (4th Cir. 2019).  In conducting its *de novo* review, the Court accepts as true all allegations in the complaint and draw all

reasonable inferences in favor of the plaintiff. *Id.* at 274-75 (citing *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018)).

## II. The District Court Erred in Dismissing Plaintiffs' Appeal for Lack of Jurisdiction

### a. The Deprivation of Plaintiffs' Hearing is Fairly Traceable to the U.S. Department of Health and Human Services.

Plaintiffs have standing to bring the instant claim, as their injury is fairly traceable to the Agency. The causation element of standing, demanding that the injury be fairly traceable to a defendant, does not require proximate causation, nor must the defendant be the only party responsible. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490 (7th Cir. 2005). Generally, a plaintiff need only allege that, but for some act or omission by the defendant, the injury would not have occurred. *See, e.g.*, *Lexmark Int'l,* 572 U.S.; *Norton*, 422 F.3d. As acknowledged by the district court, "the 'fairly traceable' requirement does not strictly demand proximate causation," but simply requires "sufficient connection between the plaintiff's injury and the conduct of the defendant, such that a court ought to assert jurisdiction over the dispute.'" Appx209-10 (citing *Libertarian Party of Va. V. Judd*, 718 F.3d 308, 315-16 (4th Cir. 2013); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000)). The requisite connection between the Agency's actions and the injury

suffered by Plaintiffs is met where Plaintiffs would not have been foreclosed from their post-deprivation hearings but for the Agency's actions. The judge's denial on grounds of standing is therefore in error.

Foremost, Plaintiffs' deprivation of property is directly traceable to the Agency's actions. The Agency unilaterally deprived Plaintiffs of their property when it terminated Ms. Brown from federal service, and reduced Mr. Alvarez's grade and pay. Appx150-155, 161-163. Following the Agency's adverse personnel actions, Plaintiffs timely sought post-deprivation hearings. Appx164-178. Plaintiffs' appeals to the MSPB were attempts to exercise their right to review of the Agency's acts by some entity other than the Agency itself.[1] Rather than allow for the Constitutionally mandated post-deprivation hearings to proceed, the Agency took steps to delay those proceedings and, necessarily, any timely review of the merits of the Agency's deprivation of Plaintiffs' property.[2] *See* Appx30-34, 45-49, 61-65, 81-85.

---

[1] The fact that the ongoing delays in post-deprivation hearings for Plaintiffs are measured in years, where no third party has yet reviewed the merits of those deprivations, is one of several factors indicative of the delay rising to a constitutional violation. *See infra*, Section III; *FDIC v. Mallen*, 486 U.S. 230, 242 (1988).

[2] The district court avers that the Agency filed motions as simply part of an adversarial proceeding. *See* Appx267. Yet, the Agency's motions are not part of motions practice addressing the merits of the underlying appeals. Rather, the motions to reassign or dismiss seek, on their face, purely a procedural delay in the processing of Plaintiffs claims. *See* Appx30-34, 45-49, 61-65, 81-85.

The Agency, not the MSPB, filed "Motion[s] for Reassignment to Properly Appointed Administrative Judge[s]" or in the alternative "Motion[s] for Dismissal Until a New Board is Confirmed." *Id.* The MSPB's granting of Defendant's motions does not negate the Agency from having taken the personnel actions appealed by Plaintiffs, nor does it sever the connection between the Agency's actions in filing its motions and the failure to provide Plaintiffs with a timely, post-deprivation hearing. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335, 344 fn. 7 (1986) (noting that a judge's decision to issue a warrant does not break the causal chain between an officer's application for a warrant and subsequent corresponding arrest).

Absent Defendant's motions, there is no indication that the MSPB would have initiated the ongoing cycle of repeatedly dismissing Plaintiffs' appeals without holding a post-deprivation hearing. These constant dismissals are a direct result of the Agency's motions. In MSPB appeals against the Agency, from August 19, 2019, through issuance of the district court's order of dismissal, approximately 249 Initial Decisions dismissing claims without prejudice against approximately one hundred (100) individuals have been issued because of Defendant's *Lucia* argument: that the MSPB administrative judges lack the authority to decide appeals under *Lucia v. Sec. & Exch. Comm'n*, 138 S.Ct. 2044 (2018). *See* Appx101-108, 179-181 (listing MSPB DWOP Initial Decisions where

the Department of Health and Human Services is a party, from August 19, 2019, to

the district court's order, dismissing on grounds of the *Lucia* issue). For Plaintiffs'

cases, the Agency filed a motion raising the *Lucia* issue, prompting the dismissal

without prejudice. *See* Appx30-34, 45-49, 61-65, 81-85.

The district court makes note of an MSPB administrative judge's ability to

dismiss such an appeal without prejudice even absent a party's motion. Appx211-

12. Yet, based on a review of the publicly available records, the MSPB has not

dismissed *sua sponte* any appeal on the *Lucia* issue.[3] Only upon receipt of such

motions is the MSPB initiating a cycle of dismissals that, in effect, indefinitely

suspend appeal processing. Absent a *Lucia* motion by a party, the MSPB has

proceeded as normal and issued initial decisions on the merits of appeals.

The MSPB's own issued guidance and statements indicate that its

administrative judges will continue to issue initial decisions on the merits, and that

it will not dismiss cases on the *Lucia* question, unprompted. In a filing in the

Federal Circuit Court of Appeals, the MSPB noted that, "[s]ince the MSPB's loss

---

[3] *See, e.g., Cunningham v. Dep't of Defense*, 2021 MSPB LEXIS 502 (Feb. 5, 2021)(Initial Decision reversing Agency's removal action); *Baker, Jr. v. Dep't of Commerce*, 2021 MSPB LEXIS 353 (Jan. 27, 2021)(Initial Decision sustaining Agency's removal action based on charges of unacceptable performance); *Haury v. Dep't of Agriculture*, 2020 MSPB LEXIS 1154 (Mar. 20, 2020) (Initial Decision affirming Agency's removal action for misconduct); *Paczkowski v. Dep't of Agriculture*, 2019 MSPB LEXIS 3158 (Aug. 26, 2019)(Initial Decision mitigating Agency's thirty-day suspension on inappropriate conduct charge to fifteen days).

of quorum, its administrative judges have continued to adjudicate initial appeals pursuant to longstanding delegated authority." Appx113.[4]

The front page of the MSPB's website provides a document addressing Frequently Asked Questions about the Lack of Board Quorum and Lack of Board Members. Specifically, the Board notes the following:

> **3. Can administrative judges (AJs) issue initial decisions when there is a lack of Board quorum or Board members?**
> Yes, AJs may and have continued to issue initial decisions since the lack of quorum began, pursuant to longstanding delegated authority [. . .]

Appx138 (emphasis in original).

The Board's own guidance indicates that matters properly before MSPB administrative judges will proceed to initial decisions on the merits. That process has been subverted in instances where an agency has filed a motion seeking dismissal or reassignment of an appeal, such as Defendant has done, repeatedly, on the appeals filed by Plaintiffs. The Agency, not the MSPB, instigated the delay in Plaintiffs receiving a timely post-deprivation hearing by filing requests for

---

[4] The MSPB's filing declined to explicitly address the Appointments Clause issue raised through *Lucia v. Sec. and Exchange Comm'n*, 138 S. Ct. 2044 (2018), as that question was not directly raised in the petitioner's application for a Writ of Mandamus. *See* Appx113.

dismissals without prejudice. The ongoing failure to provide Plaintiffs a timely, post-deprivation hearing is traceable to the Agency's own actions.

In concluding that a connection between the Agency's motions and Plaintiffs' injuries is "merely speculative," the judge offers cases on third-party intervening causes that are inapposite to the reality faced by Plaintiffs. Appx210-12. In *Jacobson v. Florida Secretary of State*, Democratic voters brought an action solely against the Florida Secretary of State to enjoin enforcement of a statute requiring placement of particular candidates at the top of the state's ballots. *See* 974 F.3d 1236, 1242 (11th Cir. 2020). In finding the injury not traceable to the Secretary, the court noted that the supervisors of the county board of elections, not subject to the control of the Secretary, were those tasked with printing the names of candidates pursuant to statute. *See id.* The voters had no standing against the Secretary where the Secretary had no hand in the alleged injury. Here, however, it is undisputed that the Agency systematically filed motions seeking dismissal of Plaintiff's claims and that, only upon filing of such motions, has the MSPB dismissed processing of appeals without prejudice in the manner at issue. Another government entity, the MSPB, is not unconnected to this situation, but that connection is entirely dissimilar to the clear separation from the alleged injury addressed in *Jacobson*.

In *Doe v. Obama*, also relied upon by the judge to evaluate standing, a group of plaintiffs filed suit against the Obama Administration claiming that an executive order and NIH Guidelines expanding federal funding for stem cell research increased embryos' risk of being reduced to embryonic stem cells. *See* Appx210-11; 631 F.3d 157, 160 (4th Cir. 2011). The relevant NIH Guidelines limited funding just to research with stem cells "[t]hat were created using in vitro fertilization for reproductive purposes and were no longer needed for this purpose," and "were donated by individuals who sought reproductive treatment . . . and who gave voluntary written consent for the human embryos to be used for research purposes." *Doe*, 631 F.3d at 161 (citing 74 Fed. Reg. at 32174)). This Court found the asserted injury not fairly traceable to the executive order or the NIH Guidelines because "the independent decision of biological parents to donate embryos for research is an intervening cause of the injury[.]" *Id*. at 161. As argued by the plaintiffs in *Doe*, "'the decisions of genetic parents of embryos whether or not to donate their unused embryos for experimentation will be powerfully influenced' by the additional funding available." *Id*. at 162. Yet, as framed by the Court, "the mere fact that the government permits private donors to choose to donate their embryos for research does not therefore make that decision fairly traceable to Executive Order 13505 or the NIH Guidelines." *Id*. at 162.

In reaching its conclusion in *Doe*, this Court referenced the rulings in *Allen* and *Simon*, wherein the Supreme Court deemed alleged connections between act and injury "entirely speculative" and "purely speculative," respectively. *Doe*, 631 F.3d at 161-62 (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1975)). Whether various parents would make a personal decision to donate embryos for research was not controlled by the availability of additional funding for possible research; it was an independent decision by parents to donate embryos for such research. The plaintiffs in *Doe* speculated that parents would be controlled or "powerfully influenced" by additional research funding. *Id.* at 162.

There is no such speculation in the instant case. Where agencies file motions as DHHS did here before the MSPB, the cases are placed in a cycle of dismissals without prejudice, with no end in sight. *See* Appx101-108, 179-181. Where agencies do not file such motions before the Board, the Board does not unilaterally DWOP cases on those grounds; the appeals proceed to hearing and the appellants in those cases are granted their post-deprivation hearing as due process requires. Plaintiffs are not speculating as to the impact of DHHS's actions, and they have offered examples of hundreds of cases before the MSPB to substantiate the traceability of the injury. *See id.* Plaintiffs have a right to a post-deprivation hearing "at a meaningful time," and through actions not of their own they are

denied that right by the government. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 457 (1985).

The judge acknowledges *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton* and Plaintiffs' "proposition that a defendant need not be the only party responsible for an injury for a plaintiff to establish standing." Appx212, fn. 5 (citing 422 F.3d 490, 500 (7th Cir. 2005)). Yet, in stating that "[t]his is true as far as it goes," the judge concludes that Plaintiffs "still need to show a sufficient connection or a genuine nexus between HHS's actions and the injury alleged[.]" *Id*. The judge goes on to say that "[t]his is not the case, for example, where 'the plaintiff suffers an injury that is produced by [the] determinative or coercive effect of the defendant's conduct upon the action of someone else[.]'" *Id*. Plaintiffs disagree, as the Agency's act had a sufficiently determinative effect to produce the injury at hand.

A plaintiff may show a determinative effect sufficient to establish traceability even where the government argues that the alleged harm depends on the independent action of third parties. In *Department of Commerce v. New York*, the Supreme Court deemed traceability requirements satisfied where the addition of a citizenship question to the census would, as concluded by the District Court, result in noncitizen households responding to the census at lower rates than other groups, thereby causing a variety of injuries tied to being undercounted. 139 S. Ct.

2551, 2557-58 (2019).  The argument that suffering the injury would first require noncitizen households to violate their legal duty to respond to the census was insufficient to defeat the traceability of the alleged harm to the government's action.  *Id.* at 2565-66.  As the Court noted, "Article III 'requires no more than de facto causality[.]'" *Id.* at 2566 (citing *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986)).  Demonstrating past practice and trends may satisfy standing where "third parties will likely react in predictable ways" to the government's action.  *Id.* Such a "theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 169-170 (1997); *Davis v. SEC*, 554 U.S. 724, 734-735 (2008)).

Plaintiffs in the instant case have offered evidence on the impact of the Agency's practices: where the Agency files the motions at issue, the MSPB acquiesces and implements a continuous cycle of dismissals without prejudice such that the appellants do not receive a hearing on their case.  *See* Appx101-108, 179-181.  Without such a motion, the MSPB does not implement these cyclical dismissals *sua sponte*.  *See supra* Section II(a), fn 3.  The Agency's actions have a clear, predictable effect, and that effect deprives Plaintiffs of their due process right to a post-termination hearing.

## III.    The Delay In Obtaining a Hearing Has Risen to a Level of a Constitutional Deprivation.

The length of delay in providing Mr. Alvarez and Ms. Brown a post-deprivation hearing is measured in years; Mr. Alvarez has waited over three (3) years, and Ms. Brown over one and a half years, since first filing their appeals against the Agency with the MSPB.  *See* Appx164-178.  This continued delay of all administrative adjudication exacerbates Plaintiffs' injury, while minimizing the Agency's justification for causing the harm.  In evaluating how long a delay in post-deprivation procedures may be justified, the Supreme Court has directed courts to examine (1) the importance of the private interest and the harm to this interest occasioned by delay; (2) the justification offered by the Government for the delay and its relation to the underlying governmental interest; and, (3) the likelihood that the interim decision may have been mistaken.  *FDIC v. Mallen*, 486 U.S. 230, 242 (1988) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)); *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).  This Court has recognized and applied this *Mallen* framework in evaluating whether a post-deprivation delay rises to the level of a constitutional violation of due process. *See, e.g.*, *U.S. v. Timms*, 664 F3.d 436 (4th Cir. 2012).

Plaintiffs unquestionably possess a substantial interest in their positions and jobs; their careers and livelihoods are at stake.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).  The Supreme Court has repeatedly recognized

the severity of depriving someone of his or her livelihood. *Mallen*, 486 U.S. at 243 (citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 263 (1987); *Loudermill*, 470 U.S. at 543). The Agency has taken personnel actions against Plaintiffs that directly reduce or wholly eliminate Plaintiffs' income and livelihood, including reductions of pay and grade, and terminations. Appx150-55, 161-63.

In evaluating the second factor, the likelihood that interim decisions may have been mistaken, the court may look to whether the action taken was based on findings by an independent body. *See Mallen*, 486 U.S. at 244. In *Mallen*, the Court found that the delay in providing a post-termination hearing required by statute was not unconstitutional because the employment action at issue was taken based on plaintiff's prior indictment by a grand jury. Consequently, the risk of mistake was slight. Here, there has been no independent review of the deprivations suffered by Plaintiffs remotely comparable to the review undertaken by a grand jury as contemplated in *Mallen*. The Agency proposed personnel actions against Plaintiffs, and Defendant proceeded to deprive Plaintiffs of their property through those actions. Appx141-63. An independent tribunal has not made any determination on the Agency's actions against Plaintiffs.

Additionally, it is relevant as to whether the appealed action rests on disputed facts and therefore requires a reviewing forum to make determinations on credibility. *See Jones v. City of Modesto*, 408 F.Supp. 935, 955 (E.D. Cal. 2005).

Here, the administrative cases filed by Plaintiffs are, at their core, a dispute of the facts proffered by the Agency in support of personnel actions. In his administrative case to the MSPB challenging his demotion, Plaintiff Alvarez disputes that the performance deficiencies alleged by Defendant are factually inaccurate. Appx169. Plaintiff Alvarez further disputes whether Defendant can demonstrate that it provided him with a reasonable opportunity to improve his performance, and whether Defendant applied valid performance standards. *Id.*; *see also Kadlec v. Dep't of Army*, 49 M.S.P.R. 534, 539 (Jul. 29, 1991) (identifying the agency's evidentiary burden in performance-based actions taken under 5 U.S.C. Chapter 43).

In her own administrative case to the MSPB challenging her termination, Plaintiff Brown disputes that the Agency has met its burden in proving the charges against her, and that the Agency has proven the appropriateness of the penalty of removal from federal service. Appx175; *see Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305 (Apr. 10, 1981) (discussing factors for evaluating the appropriateness of an agency's selected penalty). Only the Agency, not an independent entity, has reviewed the deprivations imposed by the Agency. Plaintiffs' appeals of Defendant's actions contest the factual basis of those personnel actions. This factor cannot weigh in favor of the Agency.

The final factor, justification offered for the Government's delay, cannot reasonably weigh in favor of the ongoing delays to which Plaintiffs are subject. The Agency's motions to dismiss filed before the Board raise the argument that *Lucia v. Sec. and Exch. Comm'n*, 138 S.Ct. 2044 (2018) requires that MSPB administrative judges be appointed as inferior officers. *See, e.g.*, Appx30-33, 45-48, 61-64, 81-84. The Agency makes this assertion by claiming that the powers of MSPB judges are the same as those of SEC administrative judges. *Id.* The Agency's own speculative legal theory that MSPB administrative judges are impacted by the *Lucia* decision cannot outweigh Plaintiff's constitutional interests, and the Agency cannot cite to any cases where a court has ruled that *Lucia* applies to the MSPB.

The weaknesses in the Agency's argument on the applicability of *Lucia* is further apparent when noting the differences between SEC administrative law judges (ALJs) and MSPB administrative judges (AJs). A main difference between SEC ALJs and MSPB AJs is the greater protection of the independence that the Administrative Procedures Act (APA) affords ALJs. Once selected, ALJs are afforded certain statutory protections keeping them independent from the agency. The APA provides that ALJs are exempt from evaluations and bonuses, nor are they subject to the supervision of employees or agents of the agency who work in an investigatory or prosecutorial function. 5 U.S.C. § 5372 (2018). Most

importantly, ALJs have absolute immunity from liability for their judicial acts and are insulated from political influence. *Butz v. Economou*, 438 U.S. 478, 513 (1978). This means that ALJs can only be removed for "good cause." Moreover, agencies cannot themselves remove ALJs; instead, they can only be removed after a hearing before the MSPB. 5 U.S.C. § 7521(a) (2018). This protection bolsters ALJ independence and impartiality and helps to preserve a Civil Service that follows rules and laws rather than loyalty to a particular President.

MSPB AJs have no such protections like SEC ALJs. It is important to note that when the Court issued its ruling in *Lucia,* it specifically declined to also rule whether the "good cause" removal restrictions of the APA described above were unconstitutional. *Lucia*, 138 S.Ct. at 2051, n. 2. However, Justice Breyer in his concurrence stated that whether SEC ALJs were constitutional inferior officers would in his mind depend on whether their independence was assured by the "good cause" protection from removal that the APA provides. If they constitutionally had that protection, he would not object to their becoming inferior officers and would claim the opposite if inferior officers could not constitutionally have that protection from removal. 138 S.Ct. at 2063-64. This protection was necessary to prevent ALJs from being mere "tools of the agency concerned and subservient to the agency heads in making their proposed findings of fact and recommendations."

138 S.Ct. at 2060. Since MSPB AJs have different and lesser protections, there is no reason to predict that MSPB AJs will ever be declared inferior officers.

Furthermore, the risk of a new hearing or decision is the extent of the danger of proceeding with hearings before the MSPB. This possibility must be weighed against the numerous, on-going violations of due process rights of approximately one hundred of the Agency's current and former employees.

## Conclusion

As set forth above, the district court erred in dismissing Plaintiffs' appeal for lack of jurisdiction. The Court should reverse the district court's decision and find that Plaintiffs have standing to bring their claims, and that DHHS violated Plaintiffs' due process rights to a post-deprivation hearing.

Respectfully submitted,

*/s/ Christopher H. Bonk*
Christopher H. Bonk, Esq.
Alexis N. Tsotakos, Esq.
Kevin L. Owen, Esq.
*Petitioner's Representatives*
Gilbert Employment Law, P.C.
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Email:cbonk-efile@gelawyer.com
        atsotakos-efile@gelawyer.com
        kowen-efile@gelawyer.com

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. __21-2317__    **Caption:** Alvarez v. Azar

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains _____4,830_____ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
MS Word _____ [*identify word processing program*] in
Times New Roman, 14 point _____ [*identify font size and type style*]; **or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Christopher H. Bonk _____

Party Name appellant _____

Dated: 1/3/2022 _____