# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

RICHARD ALVAREZ; SADIQA BROWN, and all others similarly situated,

Plaintiffs-Appellants,

v.

SECRETARY XAVIER BECERRA,

Defendant-Appellee.

On Appeal from the United States District Court
for the Maryland

## BRIEF FOR APPELLEE

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

EREK L. BARRON
*United States Attorney*

MARK B. STERN
JOSHUA M. SALZMAN
*Attorneys, Appellate Staff
Civil Division, Room 7258
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 532-4747*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE............................................................................2

     A.    Statutory Background..............................................................2

     B.    The Appointments Clause, the *Lucia* Case, and the Emergence of Challenges to MSPB Administrative Judges..................................3

     C.    Factual Background.................................................................6

     D.    Prior Proceedings...................................................................8

SUMMARY OF ARGUMENT........................................................................ 10

STANDARD OF REVIEW .............................................................................. 12

ARGUMENT .................................................................................................... 12

I.     Plaintiffs Lack Standing Because Their Alleged Injury Is Traceable To Independent Exercises Of Discretion By MSPB Administrative Judges .......... 12

II.    Dismissal Would Also Be Necessary Because The District Court Could Not Order The Relief Plaintiffs Seek To Redress Their Asserted Injuries ....... 18

III.   The Same Reasons That Require Dismissal For Lack Of Standing Also Demonstrate That Plaintiffs' Due Process Claim Is Without Merit .................. 24

CONCLUSION .................................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                 **Page(s)**

*Beck v. McDonald,*
   848 F.3d 262 (4th Cir. 2017) ............................................................................. 13

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................................................... 17

*Butler v. West,*
   164 F.3d 634 (D.C. Cir. 1999) ............................................................................. 3

*Carr v. Saul,*
   141 S. Ct. 1352 (2021) ....................................................................................... 26

*Davis v. MSPB,*
   No. 20-cv-2139, 2020 WL 6565224 (N.D. Ill. Nov. 9, 2020) ........................... 25

*Department of Commerce v. New York,*
   139 S. Ct. 2551 (2019) .................................................................................. 17, 18

*Doe v. Obama,*
   631 F.3d 157 (4th Cir. 2011) ......................................................................... 12, 13

*Edmond v. United States,*
   520 U.S. 651 (1997) ............................................................................................. 4

*Elgin v. Department of Treasury,*
   567 U.S. 1 (2012) ...................................................................... 3, 12, 20, 21, 23

*FDIC v. Mallen,*
   486 U.S. 230 (1988) ........................................................................................... 24

*Flynn v. SEC,*
   2018 MSPB LEXIS 3737 (M.S.P.B. Oct. 2, 2018) ............................................. 5

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ............................................................................................. 4

*Hall v. Clinton,*
   235 F.3d 202 (4th Cir. 2000) ...................................................................20

*Jadhav, In re,*
   795 F. App'x 846 (Fed. Cir. 2020) .........................................................22

*Jolley v. Department of Hous. & Urban Dev.,*
   2018 MSPB LEXIS 2724 (M.S.P.B. July 20, 2018) ................................6

*Kloeckner v. Solis,*
   568 U.S. 41 (2012) ....................................................................................23

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,*
   422 F.3d 490 (7th Cir. 2005) ...................................................................17

*Lindahl v. Office of Pers. Mgmt.,*
   470 U.S. 768 (1985) ....................................................................................2

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018) ......................................................................5, 9, 13

*Martin v. O'Rourke,*
   891 F.3d 1338 (Fed. Cir. 2018) ...............................................................21

*Simon v. Eastern Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ....................................................................................12

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*
   713 F.3d 175 (4th Cir. 2013) ...................................................................12

*Telecommunications Research & Action Ctr. v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984) ..............................................................21-22

*Turaani v. Wray,*
   988 F.3d 313 (6th Cir.), *cert. denied,*
   142 S. Ct. 225 (2021) ................................................................................15

*United States v. Fausto,*
   484 U.S. 439 (1988) ....................................................................................2

*Vietnam Veterans of Am. v. Shinseki*,
    599 F.3d 654 (D.C. Cir. 2010) ...........................................................22

*Virginia Dep't of Educ. v. Riley*,
    23 F.3d 80 (4th Cir. 1994) ...............................................................22


**U.S. Constitution:**

Art. II, § 2, cl. 2............................................................................ 3, 4


**Statutes:**

Civil Service Reform Act of 1978,
    Pub. L. 95-454, 92 Stat. 1111,
        5 U.S.C. § 1201 *et seq.* ....................................................2
            5 U.S.C. § 1201 ..........................................................2
            5 U.S.C. § 7513(d) ......................................................3
            5 U.S.C. § 7701 ..........................................................3
            5 U.S.C. § 7701(b) ......................................................3
            5 U.S.C. § 7701(g) ......................................................3
            5 U.S.C. § 7702(a)(1)(B) ......................................... 3, 23
            5 U.S.C. § 7702(e)(1) ..................................................23
            5 U.S.C. § 7703 ..........................................................5
            5 U.S.C. § 7703(a) ......................................................3
             5 U.S.C. § 7703(b)(1) ................................................21
            5 U.S.C. § 7703(b)(1)(A) ............................................3
            5 U.S.C. § 7703(b)(2) ............................................ 3, 23

28 U.S.C. § 1291 ............................................................................1

28 U.S.C. § 1295(a)(9) ..................................................................21

28 U.S.C. § 1331 ............................................................................1


**Regulations:**

5 C.F.R. § 1201.29(b) ..............................................................8, 9, 14

5 C.F.R. § 1201.29(c)..............................................................................8

5 C.F.R. § 1201.111................................................................................3

5 C.F.R. § 1201.113.............................................................................. 3, 5

**Other Authorities:**

*PN764 — Raymond A. Limon — Merit Systems Protection Board,*
    https://www.congress.gov/nomination/117th-congress/764.................... 5

*PN1071 — Tristan Lynn Leavitt — Merit Systems Protection Board,*
    https://www.congress.gov/nomination/117th-congress/1071 .................. 5

Order and Certification for Interlocutory Appeal, *Flynn v. SEC,*
    MSPB Docket No. DC-1221-14-1124-M-4 (M.S.P.B. Apr. 23, 2019),
    *located in* Respondent's Appendix, *McIntosh v. Department of Defense,*
    No. 19-2454 (Fed. Cir. Apr. 7, 2020) ...............................................6

Jon O. Shimabukuro, Cong. Research Serv., R45630, *Merit Service Protection Board
    (MSPB): A Legal Overview* (Mar. 25, 2019), https://go.usa.gov/xzgTa.........................4

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331.  JA7.

The defendant moved to dismiss and, on September 23, 2021, the district court

granted that motion and entered final judgment in defendant's favor.  JA214.  On

November 19, 2021, plaintiffs filed a timely notice of appeal.  JA215.  This Court has

jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The plaintiffs here are a current and a former employee of the U.S. Department

of Health and Human Services (HHS) who brought appeals before the Merit Systems

Protection Board (MSPB) challenging adverse employment actions taken against them

by HHS.  In the ensuing administrative proceedings, HHS submitted motions

identifying a possible constitutional defect in the process used by the MSPB to

adjudicate plaintiffs' challenges.  Based on the concerns raised in those motions, the

MSPB Administrative Judges hearing plaintiffs' challenges found good cause to enter

a series of orders that have substantially delayed the MSPB's resolution of plaintiffs'

administrative appeals.  Plaintiffs then filed this suit in federal district court alleging

that HHS's motions practice before the MSPB violated plaintiffs' due process rights.

The questions presented are:

1.  Whether the plaintiffs lack standing because the delays in MSPB review,

which has resulted from discretionary orders entered by the Administrative Judges,

are not traceable to HHS?

2.  Whether a due process suit in district court is a permissible method for seeking reversal of an adverse employment action?

3.  Whether plaintiffs have failed to state a cognizable due process claim where HHS is alleged only to have made legal arguments in the context of an adversarial proceeding before a neutral adjudicator?

## STATEMENT OF THE CASE

### A.    Statutory Background

The Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111, 5 U.S.C. § 1201 *et seq.*, "creat[ed] an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].'" *United States v. Fausto*, 484 U.S. 439, 443 (1988) (second alteration in original) (quoting *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 774 (1985)).  The CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id.*

The CSRA established the MSPB, an independent, quasi-judicial agency in the executive branch.  The Board itself is composed of 3 members appointed by the President, by and with the consent of the Senate.  *See* 5 U.S.C. § 1201.[1]  The agency also employs subordinate adjudicators including Administrative Judges.

---

[1] We use the term "MSPB" to refer to the agency writ large and the term "Board" to refer to the specific 3-member body atop the agency.

Qualifying federal employees facing certain adverse employment actions may file an administrative appeal with the MSPB. 5 U.S.C. §§ 7513(d), 7701. Such appeals are typically heard in the first instance by an Administrative Judge, who is authorized to issue an initial decision and award appropriate relief to prevailing employees, including reinstatement, back pay, and attorney fees. *Id.* § 7701(b), (g); 5 C.F.R. § 1201.111. An Administrative Judge's "initial decision becomes a final decision if neither party, nor the [Board] on its own motion, seeks further review within thirty-five days." *Butler v. West*, 164 F.3d 634, 638-39 (D.C. Cir. 1999); 5 C.F.R. § 1201.113.

Employees adversely affected by a final order of the MSPB may seek judicial review. 5 U.S.C. § 7703(a). Litigants alleging that "a basis for the [adverse] action was discrimination prohibited by" certain federal employment statutes, *id.* § 7702(a)(1)(B), may seek review in federal district courts, *id.* § 7703(b)(2). For all other claims, "a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." *Id.* § 7703(b)(1)(A). The Supreme Court has held that the CSRA's review scheme is generally the exclusive remedy through which a federal employee may challenge an employment action. *See Elgin v. Department of Treasury*, 567 U.S. 1, 10-13 (2012).

## B. The Appointments Clause, the *Lucia* Case, and the Emergence of Challenges to MSPB Administrative Judges

**1.** The Appointments Clause of the U.S. Constitution specifies the procedures through which "officers" of the United States may be appointed. *See* Art. II, § 2, cl. 2.

Principal officers, such as the three members of the Board, must be nominated by the President and confirmed by the Senate. *See id.*; *see also Edmond v. United States*, 520 U.S. 651, 659-60 (1997). When authorized by law, inferior officers may be appointed through certain other specified processes, including through appointment by the applicable Head of Department. *See* U.S. Const. art. II, § 2, cl. 2. For an agency like the MSPB that is helmed by a multimember body, the applicable Head of Department capable of appointing inferior officers is the multimember body as whole. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 512-13 (2010).

**2.** In January 2017, the Board ceased to have the two members needed to constitute a quorum and in March 2019, lost its last remaining member. JA138. While the Board was without a quorum, it did not issue decisions in cases where parties petitioned for Board review of an Administrative Judge's initial decision. JA139. The Board also was without authority to appoint inferior officers.

Both President Trump and President Biden submitted nominations for the open Board seats to the Senate. *See* Jon O. Shimabukuro, Cong. Research Serv., R45630, *Merit Service Protection Board (MSPB): A Legal Overview* 16 (Mar. 25, 2019), https://go.usa.gov/xzgTa (describing how President Trump submitted Board nominations to the Senate in both 2018 and 2019); JA205 (noting that by September 2021, President Biden had nominated three people to the Board). However, it was not until March 1, 2022, that the Senate confirmed anyone to the open Board seats,

4

restoring the Board's quorum.  *See PN764 — Raymond A. Limon — Merit Systems Protection Board*, https://www.congress.gov/nomination/117th-congress/764 (showing confirmation by voice vote); *PN1071 — Tristan Lynn Leavitt — Merit Systems Protection Board*, https://www.congress.gov/nomination/117th-congress/1071 (same).

During the period when the Board was without a quorum, MSPB Administrative Judges continued to hear cases and issue initial decisions on the basis of preexisting delegated authority.  JA138.  In instances where neither party petitioned for Board review of these initial decisions, these initials decisions became final and subject to judicial review.  JA138; 5 C.F.R. § 1201.113; *see also* 5 U.S.C. § 7703.

**3.**  In 2018, the United State Supreme Court held in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that administrative law judges (ALJs) employed by the Securities and Exchange Commission were inferior officers who were required to be appointed in conformity with the Appointments Clause of the Constitution.  The Court's conclusion was driven by an analysis of the functions performed by ALJs in conducting adversarial hearings.  *See id.* at 2053.

In the wake of that decision, parties in some MSPB proceedings—both governmental parties and private parties—argued that MSPB Administrative Judges are empowered to perform many of the same functions as ALJs and, thus, under *Lucia*, they are also officers who are required to be properly appointed.  *See, e.g.*, *Flynn v. SEC*, 2018 MSPB LEXIS 3737, at *1 (M.S.P.B. Oct. 2, 2018) (private party asserted

*Lucia* challenge to Administrative Judge); *Jolley v. Department of Hous. & Urban Dev.*, 2018 MSPB LEXIS 2724, at *1 (M.S.P.B. July 20, 2018) (same).

In April 2019, in response to a *Lucia* objection asserted by the private party in an MSPB proceeding, an Administrative Judge certified for interlocutory appeal to the Board the question of whether MSPB Administrative Judges are not properly appointed. *See* JA118 (discussing Order and Certification for Interlocutory Appeal, *Flynn v. SEC*, MSPB Docket No. DC-1221-14-1124-M-4 (M.S.P.B. Apr. 23, 2019)).[2] Because of the extended lack of a Board quorum, the Board has yet to address the question of whether the agency's Administrative Judges are properly appointed.

## C. Factual Background

Plaintiffs are a current and a former employee of the Department of Health and Human Services who received adverse employment actions within the scope of the CSRA. JA203. Mr. Alvarez was given a Notice of Proposed Demotion and, after he had an opportunity to respond before the agency, was demoted. JA8, JA203. Ms. Brown was given a Notice of Proposed Termination and, after she had an opportunity to respond before the agency, was terminated. JA8, JA203. Both plaintiffs filed timely challenges before the MSPB, asking for review of these respective adverse employment actions. Mr. Alvarez challenged the propriety of his

---

[2] A copy of the *Flynn* interlocutory order can be found in Respondent's Appendix, *McIntosh v. Department of Defense*, No. 19-2454 (Fed. Cir. Apr. 7, 2020).

demotion under the applicable statutory standard, while Ms. Brown alleged that she was discriminated against on the basis of a disability and that her termination constituted retaliation for prior protected activity. JA8, JA204-JA205.[3]

Consistent with usual MSPB procedures, each case was assigned to an Administrative Judge. JA204-JA205. In each case, HHS filed a motion challenging the authority of the assigned Administrative Judge on Appointments Clause grounds and seeking reassignment of the matter to a properly appointed Administrative Judge or dismissal without prejudice until a new Board was confirmed. JA204-JA205; *see also* JA30-JA34, JA81-JA85.

In ruling on these motions, the Administrative Judge in each case noted that the question of whether *Lucia* applies to MSPB Administrative Judges had already been certified to the Board and that, accordingly, the interest in "judicial economy" provided good cause for declining to proceed with plaintiffs' challenges pending the Board's resolution of that threshold question. JA36, JA93. Each Administrative Judge then invoked an MSPB regulation authorizing a matter to be dismissed without prejudice on the "judge's own motion or upon request by either party" where, in "the sound discretion of the judge," the "interests of fairness, due process, and

---

[3] Because Ms. Brown alleged discrimination and retaliation, she initially filed a complaint with the HHS Office of Equal Employment Opportunity (EEO). JA205. She commenced her action before the MSPB after the EEO Office concluded her claims lacked merit. JA205.

administrative efficiency outweigh any prejudice to either party." 5 C.F.R. § 1201.29(b). On the basis of that regulation, the Administrative Judges dismissed the respective challenges without prejudice, but further specified that the challenges would automatically be reinstated in 180 days. JA36, JA93; *see also* 5 C.F.R. § 1201.29(c) (providing that in cases where a matter is dismissed without prejudice, the Administrative Judge may specify that the matter is to be "automatically refiled by the judge as of a date certain").

In Mr. Alvarez's case, 180 days passed and the administrative appeal was reinstated. Because there had been no change in the underlying circumstances during the intervening period, HHS then renewed its motion, and the Administrative Judge issued a second dismissal without prejudice for an additional 180 days. JA10.

This litigation was commenced less than 180 days after the first dismissal of Ms. Brown's administrative appeal. JA11.[4]

## D. Prior Proceedings

Plaintiffs filed this putative class action in the United States District Court for the District of Maryland. JA6. The suit named the HHS Secretary as the sole defendant and the complaint's single count asserts that plaintiffs were deprived of property without due process of law. Plaintiffs urged that HHS had prevented

---

[4] After this litigation was commenced, each plaintiff has experienced additional cycles of reinstatement of their MSPB challenges followed by new dismissals without prejudice. JA204-JA205.

plaintiffs from obtaining timely post-deprivation hearings by seeking reassignment of plaintiffs' MSPB challenges to properly appointed Administrative Judges. JA15-JA16. Among other relief, plaintiffs sought rescission of the adverse actions challenged in the MSPB proceedings and asked the court to order that plaintiffs be reinstated and awarded back pay. JA16.

HHS moved to dismiss on several grounds, explaining that plaintiffs lack standing, that they had received all the process due to them from HHS, and that the CSRA defines the procedures through which plaintiffs can challenge the adverse employment actions. JA208.

The district court granted the motion to dismiss for lack of standing and found it unnecessary to reach the other asserted grounds for dismissal. JA208-JA213. The court concluded that plaintiffs' asserted injury—the denial of timely post-deprivation review of their adverse employment actions—was not "fairly traceable to the sole named defendant, HHS." JA209. The court emphasized that plaintiffs conceded that, under the applicable regulations, the question of whether an MSPB proceeding should be dismissed without prejudice is committed to the sound discretion of the Administrative Judge. JA209; *see* 5 C.F.R. § 1201.29(b). In light of that fact, the court determined that "the chain of causation linking HHS's actions to the plaintiffs' injuries is too tenuous to support constitutional standing given the intervening actions of the MSPB administrative judge," who is not "under any obligation to accept the

arguments made by HHS in adversarial proceedings." JA211. Because HHS does not "control[] the appellate process" before the MSPB and the filing of a motion is "part of the process rather than the deprivation of process," the court "decline[d] to hold that the filing of a motion in an adversarial proceeding before a neutral arbiter is a sufficient cause . . . to support standing." JA212. This appeal followed.

## SUMMARY OF ARGUMENT

Plaintiffs sought review of adverse personnel actions by HHS before the Merit Systems Protection Board. Plaintiffs urge that HHS violated their due process rights in those proceedings by "repeatedly argu[ing] before the MSPB that MSPB administrative judges lacked the delegated authority to adjudicate appeals" from adverse employment actions against plaintiffs. JA13 (Compl.); *see also e.g.,* JA31-JA33 (HHS Mot. for Properly Appointed AJ) (arguing that the "powers and authority held by MSPB AJs are nearly identical to the powers held by the Securities and Exchange Commission ALJs" and, thus, under *Lucia v. SEC*, 138 S. Ct. 2044 (2018), MSPB Administrative Judges must be properly appointed). To remedy the asserted due process violation, plaintiffs urge that HHS should be required to reinstate plaintiffs and award them back pay. JA16.

The district court correctly held that plaintiffs' asserted injury does not result from actions of HHS, which did no more than identify a possible constitutional defect in an administrative proceeding conducted before an impartial adjudicator. The

10

delays of which they complain result from the independent determination of the MSPB Administrative Judges that the Appointments Clause concerns implicated by their proceedings are sufficiently serious to warrant a stay pending Board review. The delays are thus attributable to those Administrative Judge determinations. *See* JA14 (Compl.) (recognizing that reviews of the adverse employment actions "have been delayed indefinitely through *MSPB decisions* dismissing [plaintiffs'] appeals without prejudice" (emphasis added)). The length of the delays, in turn, resulted from the absence of confirmed Presidential nominees to the empty seats on the Board. Viewed from either perspective, the delays have not been caused by HHS, and the district court correctly concluded that plaintiffs have failed to show any injury "traceable to the sole named defendant, HHS" (JA209), and have thus failed to demonstrate Article III standing.

This Court can properly affirm on the basis of the district court's reasoning, and, like the district court, it need not reach additional grounds that would require rejection of plaintiffs' claims. Were it do so, however, it should recognize that the district court could not award the relief sought—reinstatement and back pay. The remedy for a due process violation is generally to require that the plaintiffs be accorded the process to which they claim to be entitled. Plaintiffs cannot obtain from a district court the same relief that they seek in their challenge to adverse personnel

actions which, in any event, must be resolved by the exclusive procedures established by the CSRA.  *See Elgin v. Department of Treasury*, 567 U.S. 1, 10-13 (2012).

Apart from these several reasons requiring dismissal, plaintiffs' due process claim fails on the merits for the same reasons that plaintiffs have failed to show that their claimed injuries were caused by HHS.  HHS violated no constitutional standards by making a legal argument to a neutral adjudicator.

## STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss.  *See Southern Walk at Broadlands Homeowner's Ass'n, v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181 (4th Cir. 2013).

## ARGUMENT

I.     **Plaintiffs Lack Standing Because Their Alleged Injury Is Traceable To Independent Exercises Of Discretion By MSPB Administrative Judges**

**1.**  The "case or controversy" requirement found in Article III of the Constitution "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Accordingly, when there is an "independent decision" of a nonparty

that constitutes an "intervening cause of the injury" asserted by the plaintiffs, a suit must be dismissed for lack of standing. *Id.*[5]

The district court correctly applied that principle in dismissing plaintiffs' allegations here. Plaintiffs challenged adverse personnel actions by HHS before the MSPB under the procedures established by the Civil Service Reform Act. The personnel actions are not themselves the source of an asserted violation. Plaintiffs' claim instead is that HHS violated their due process rights by raising the significant question of the status of the MSPB's Administrative Judges as inferior officers for Appointments Clause purposes. *See, e.g.*, JA31-JA33 (HHS Mot. for Properly Appointed AJ) (explaining that the "powers and authority held by MSPB AJs are nearly identical to the powers held by the Securities and Exchange Commission ALJs" at issue in *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). That issue presents potentially significant practical concerns and has been raised by private parties as well. *See supra* pp. 5-6. And though plaintiffs emphasize the delays they have experienced in the MSPB process, the fact that the Board has not yet resolved the issue for which plaintiffs' cases are being held is not attributable to any action by HHS but, rather, is attributable solely to the long period in which there were no confirmed Board members.

---

[5] In a putative class action like this one, this Court "analyze[s] standing based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

On plaintiffs' own telling, HHS did no more than raise a legal question before a neutral adjudicator and, thus, any injuries plaintiffs have suffered are attributable to the independent decisions of MSPB Administrative Judges dismissing plaintiffs' administrative challenges without prejudice subject to automatic refiling.[6] There is no dispute that under MSPB regulations, the question of whether a matter should be dismissed without prejudice is committed to the "sound discretion" of the Administrative Judge. 5 C.F.R. § 1201.29(b). Indeed, the complaint expressly recognizes as much. JA11. The applicable regulations do not require an Administrative Judge to grant a dismissal without prejudice upon the request of a party; rather, dismissal without prejudice is a docket management tool that an Administrative Judge can elect to utilize after weighing factors such as "administrative efficiency," "fairness," and "prejudice to either party." 5 C.F.R. § 1201.29(b). Dismissal without prejudice can be granted "on the judge's own motion," as well as "upon request by either party." *Id.*

The dismissal orders confirm that the Administrative Judges exercised their independent judgment in determining whether to grant dismissals without prejudice.

---

[6] While the MSPB decisions at issue are each denominated as a "dismissal without prejudice," they include provisions specifying that the cases are to be automatically refiled in 180 days without need for further action by the plaintiff and further provide that "[a]ny documents already submitted . . . are already part of the record and should not be resubmitted when the appeal is refiled." *E.g.*, JA36. Thus, in functional terms, the orders more resemble temporary administrative stays than dismissals.

In each of the decisions at issue, the Administrative Judges understood themselves to be making independent determinations as to whether a dismissal without prejudice would be appropriate. JA36 ("[I]n the interest of judicial economy, I find there is good cause to dismiss this appeal without prejudice" pending consideration by a "newly confirmed Board" of an already-pending Board appeal raising the question of whether "I have the authority to decide this appeal under *Lucia*."); JA51-JA52 ("[D]ue to the currently pending interlocutory appeal, in the interests of judicial economy and administrative efficiency, I dismiss this appeal without prejudice."); JA71-JA72 (same); JA92-JA93 (same); JA183 ("Administrative Judges have broad discretion to control proceedings. . . . I find it proper to dismiss this appeal without prejudice to refiling."); JA193-JA194 (similar).

The district court correctly found "the chain of causation linking HHS's actions to the plaintiffs' injuries is too tenuous to support constitutional standing given the intervening actions of the MSPB administrative judge." JA211; *see Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir.) (recognizing that "[a] third party's 'legitimate discretion' breaks the chain of constitutional causation"), *cert. denied*, 142 S. Ct. 225 (2021).

**2.** Notwithstanding the undisputed independent role played by the MSPB Administrative Judges in opting to delay resolution of plaintiffs' challenges, plaintiffs contend that they have standing because the dismissal orders are "fairly traceable" to HHS insofar as they were issued in response to motions filed by HHS. Br. 6. But

15

while plaintiffs emphasize case law that recognizes that traceability does not require a showing of proximate causation in the tort law sense, they identify no precedent suggesting that the traceability requirement is satisfied on facts bearing any resemblance to those presented here.

Plaintiffs briefly argue that their injuries are directly traceable to HHS insofar as it was HHS that took the adverse employment actions that plaintiffs seek to challenge. Br. 7. The employment actions are the subject of their challenges before the MSPB; they are in no sense constitutional violations. Plaintiffs nowhere allege that HHS failed to comply with any statutory or constitutional requirement before taking these actions. On the contrary, the complaint makes clear that HHS provided both plaintiffs with the opportunity for pre-deprivation review, including notice and an opportunity to respond, before any adverse action was taken against them. JA8. Plaintiffs' due process allegations are accordingly focused entirely on their delayed receipt of the *post-deprivation* review available through the MSPB process. It would thus be necessary for plaintiffs to show that orders issued by the MSPB are traceable not to the agency and its Administrative Judges, but to HHS.

Plaintiffs' primary argument is that there is no indication that the Administrative Judges would have dismissed plaintiffs' challenges *sua sponte* and, thus, that the dismissals are traceable for standing purposes to the motions filed by HHS. But HHS does not control the MSPB process but, rather, is "subject to it." JA212.

Whether an Administrative Judge would have dismissed if HHS had not raised the Appointments Clause question has no bearing on the fact that only the MSPB had authority to dismiss the actions and that it did so in the independent exercise of that authority. HHS's action plainly did not have a "determinative or coercive" effect on the MSPB, *see Bennett v. Spear*, 520 U.S. 154, 169 (1997), that would make the MSPB's independent actions traceable to HHS for Article III purposes.

Plaintiffs' reliance on readily distinguishable case law underscores their failure to demonstrate traceability here. In *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490 (7th Cir. 2005), on which plaintiffs place primary reliance, a party alleged injury resulting from a compact negotiated between a State and an Indian tribe that would have had no force absent the approval of the Secretary of the Interior. *See id.* at 501. Under those circumstances, the Seventh Circuit rejected the argument that the plaintiff's injury was traceable only to the tribe and the State, concluding that the injury was also traceable to the Secretary because it was the Secretary who "enabled the injury" by failing to reject the allegedly invalid compact. *Id.* That scenario—which involved a legally operative act by the named defendant— bears no resemblance to the circumstances of this case.

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), on which plaintiffs also seek to rely, is similarly far afield. The plaintiffs in that case challenged the inclusion in the census questionnaire of a question regarding citizenship. The

plaintiffs urged that the question would discourage responses by non-citizens and result in disproportionate population undercounts. The Supreme Court concluded that the respondents could demonstrate standing based on the "predictable effect of Government action on the decisions of third parties." *Id.* at 2556. That case cannot plausibly be analogized to the circumstances here, where HHS filed motions in administrative proceedings that were ruled on by independent adjudicators who exercised "sound discretion" in choosing whether to grant dismissals without prejudice. There is no traceability here.

## II.     Dismissal Would Also Be Necessary Because The District Court Could Not Order The Relief Plaintiffs Seek To Redress Their Asserted Injuries

This Court, like the district court, has no need to consider additional grounds that would require dismissal of plaintiffs' claims. Were it do so, however, it should conclude that plaintiffs' due process claims are not redressable by an order of the district court. In this suit, plaintiffs seek to overturn the adverse employment actions against them and to obtain reinstatement and awards of back pay. JA16 (Compl.) (prayer for relief). Plaintiffs' brief in this Court confirms that their due process claim is predicated on, and ultimately seeks to undo, HHS's "personnel actions" against them. Br. 5. This is not relief that can be sought through the filing of a due process claim in district court. Plaintiffs also seek an order requiring HHS to "implement appropriate constitutionally compliant safeguards in taking adverse [employment]

actions" (JA16), but this, too, is untethered from the specific injury they have alleged: denial of timely post-deprivation through the MSPB process. JA209 (describing plaintiffs' asserted injury as "a lack of post-deprivation process").

The remedy for a meritorious due process claim is generally to require that a plaintiff receive the process due, not to award the ultimate relief sought. Yet, plaintiffs have not asked for an order compelling an MSPB ruling in their actions, and they do not suggest that the district court would have had authority to issue such an order. Plaintiffs have not even named the MSPB as a party to this litigation.

The mismatch between plaintiffs' cause of action and the relief they have sought should be particularly apparent in light of the Senate's recent confirmation of two individuals to the Board, restoring the Board's quorum. The Board will now be able to decide the question for which plaintiffs' administrative appeals have been held, which will enable plaintiffs' administrative appeals to move forward. The confirmation of new Board members post-dates the filing of plaintiffs' opening brief in this Court. But plaintiffs' continued maintenance of their suit in the wake of this development confirms that the object of their suit is substantive relief such as back pay and reinstatement, not more expeditious post-deprivation review.

The defects in plaintiffs' suit are further underscored by the fact that allowing plaintiffs to seek reinstatement and back pay here would circumvent the procedures established by the Civil Service Reform Act, which prescribes the exclusive remedies

through which covered federal employees may challenge employment actions. *See Elgin v. Department of the Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000) ("Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship."). That plaintiffs have denominated their claims in term of "due process" does nothing to alter the analysis. The Supreme Court has held that there is no exception to the CSRA's "exclusive review scheme" for constitutional challenges. *Elgin*, 567 U.S. at 13.

The specific analysis—though not the result—is somewhat different for Mr. Alvarez and Ms. Brown because Ms. Brown has alleged discrimination, whereas Mr. Alvarez has not. JA8, JA205. As to Mr. Alvarez, who presented only a CSRA challenge during his administrative proceeding, the Supreme Court's holding in *Elgin* is dispositive of the district court's lack of jurisdiction. Claims under the CSRA are channeled through an exclusive review scheme that requires the covered employee to first litigate his claim before the MSPB and then before the Federal Circuit. *See Elgin*, 567 U.S. at 10-13; *see also id.* at 6 ("The Federal Circuit has 'exclusive jurisdiction' over

appeals from a final decision of the MSPB." (first quoting 28 U.S.C. § 1295(a)(9); and then citing 5 U.S.C. § 7703(b)(1))).

Employees cannot plead around the CSRA's exclusive review provisions by attaching constitutional labels to their challenges to adverse employment actions. Here, Mr. Alvarez's "constitutional claim[] [is] the vehicle by which [he] seek[s] to reverse the removal decision[], to return to federal employment, and to receive the compensation [he] would have earned but for the adverse employment action." *Elgin*, 567 U.S. at 22. Because it is "a challenge to CSRA-covered employment action brought by [a] CSRA-covered employee[] requesting relief that the CSRA routinely affords," it falls squarely within the CSRA's exclusive review scheme, which channels all claims to the MSPB and then the Federal Circuit, and does not allow for district court jurisdiction. *Id.*

This analysis is not altered by the fact that the MSPB has yet to decide Mr. Alvarez's claim. Just as the Federal Circuit has exclusive jurisdiction over final decisions of the MSPB in CSRA cases, that Court is also the proper venue for seeking redress when review has been wrongly withheld. *See Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018) (reasoning that "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction" (alteration in original) (quoting *Telecommunications*

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984))).[7] Indeed, the Federal

Circuit has already entertained a mandamus petition challenging delays in MSPB

proceedings that resulted from HHS's assertion of objections under *Lucia*. *See In re*

*Jadhav*, 795 F. App'x 846, 847 (Fed. Cir. 2020) (per curiam). While the Federal Circuit

declined to grant the petitioner relief on the facts of that case, the Federal Circuit

accepted jurisdiction over the mandamus petition and left open the possibility that it

might grant relief upon a showing of "egregious" delay. *Id.* at 848.[8] These decisions

underscore that Mr. Alvarez has no proper basis for invoking district court

jurisdiction either before or after MSPB resolution of his challenge.

Ms. Brown's situation is slightly different because she has alleged

discrimination on the basis of a disability. JA205. As *Elgin* recognizes, the CSRA's

exclusive review scheme does not apply in the same way when a covered employee

alleges that a basis for the action was discrimination prohibited by enumerated federal

---

[7] This Court has reached a similar conclusion. *See Virginia Dep't of Educ. v. Riley*, 23 F.3d 80, 83 (4th Cir. 1994) ("It is well-settled that in rare instances an appellate court may act under the authority of the All Writs Act in granting interlocutory relief to a party aggrieved by administrative actions when the court would have full appellate jurisdiction following a final agency decision.").

[8] The availability of the Federal Circuit to hear an undue delay claim also underscores that no due process claim based on undue delay could proceed in any forum besides the Federal Circuit. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 660 (D.C. Cir. 2010) (reasoning that where claims "based on unreasonable delay must be brought [before a particular appellate body], we think it virtually inevitable that it would be held that the [same appellate body] has exclusive jurisdiction to hear due process claims premised on the same delay").

employment laws.  *See* 567 U.S. at 13 (discussing 5 U.S.C. §§ 7702(a)(1)(B),

7703(b)(2)); *see also Kloeckner v. Solis*, 568 U.S. 41, 44-46 (2012) (describing the

procedures applicable to so-called "mixed cases" in which an employee challenges an

employment action within the scope of the CSRA and alleges discrimination).  In

particular, once a mixed case has been pending before the MSPB for 120 days, the

employee is not obligated to continue to await a final decision of the MSPB and may

instead "file a civil action to the same extent and in the same manner as provided in"

the antidiscrimination laws.  5 U.S.C. § 7702(e)(1).  Ms. Brown thus has a procedural

option available to her that was unavailable to Mr. Alvarez—she could have filed an

action in district court challenging her termination under the antidiscrimination laws.

Instead of doing so, her district court action raised only her claim under the Due

Process Clause.  There is no CSRA exception that authorized Ms. Brown to file such a

suit or that conferred jurisdiction on the district court to hear it.  *See Elgin*, 567 U.S. at

12-13 (recognizing that the "only one situation" where the CSRA exempts a "type of

claim" from mandatory channeling to the Federal Circuit is when the employee alleges

discrimination and files a civil action "as provided by the applicable employment

law").  Accordingly, her suit is barred for the same reason as Mr. Alvarez's.

## III. The Same Reasons That Require Dismissal For Lack Of Standing Also Demonstrate That Plaintiffs' Due Process Claim Is Without Merit

Although there is no reason for the Court to reach the issue, the reasons underlying the district court's holding regarding causation also demonstrate that plaintiffs have failed to state a cognizable due process violation.

It is undisputed that HHS provided any legally necessary pre-deprivation review, including offering plaintiffs both notice of their respective proposed adverse employment actions and an opportunity to respond. *See* JA8 (acknowledging that plaintiffs received pre-depravation process); JA146-JA147 (notifying Mr. Alvarez that he had the "right to respond" to his proposed demotion, the "right to be represented," and the right to "review the materials" relied upon by the agency); JA159-JA160 (similar for Ms. Brown). This case is thus fundamentally different from *FDIC v. Mallen*, 486 U.S. 230 (1988), a case heavily cited by plaintiffs, which considered a scenario in which there was no pre-suspension hearing. *Id.* at 241.

As discussed, although plaintiffs claim that HHS deprived them of due process by delaying their post-deprivation hearings, HHS did nothing more than identify for the MSPB a possible constitutional defect in its proceedings. HHS's filing of motions flagging the potential defect constituted participation in the MSPB proceedings rather than a denial of review (which HHS lacked capacity to withhold). *See* JA212 (noting that HHS's "filing of a motion appears" to be "part of the process rather than the

24

deprivation of process"). Plaintiffs identify no case suggesting that the mere act of identifying a possible constitutional defect to a neutral adjudicator constitutes a denial of due process.

Plaintiffs insinuate that HHS's motion practice before the Administrative Judges was merely a "procedural delay" tactic grounded in a "speculative" legal theory. Br. 7 n.2, 19. Their disagreement here is with the Administrative Judges who found HHS's argument to be sufficiently serious to warrant a stay pending further clarification from the Board. Resolution of the Appointments Clause question presents potentially significant practical concerns. Private parties in MSPB proceedings have also raised *Lucia* claims, *see supra* pp. 5-6, and at least one district court has described the issue of whether the MSPB's Administrative Judges are properly appointed as raising a "serious question." *Davis v. MSPB*, No. 20-cv-2139, 2020 WL 6565224, at *9 (N.D. Ill. Nov. 9, 2020); *see also* JA31-JA33 (detailing the ways that the powers of MSPB Administrative Judges track those that *Lucia* deemed indicative of officer status).

HHS also has legitimate reasons for flagging the possible constitutional defect at the outset of an administrative proceeding. A litigant seeking review of an unfavorable MSPB determination might urge that they are entitled to a new hearing before an Administrative Judge appointed by the Board and seek vacation of the determination on that ground. In at least one instance, an employee who was

25

unsuccessful in challenging an adverse employment action before the MSPB argued

for the first time on judicial review that the Administrative Judge who heard the case

was not properly appointed and, thus, that the MSPB decision favorable to the

government should be set aside on that basis. *See* Reply Brief for Petitioner Elfina

McIntosh at 13-14, *McIntosh v. Department of Defense*, No. 19-2454 (Fed. Cir. July 27,

2020).[9] It is not procedural gamesmanship for HHS to take steps to ensure that any

adjudication in which it participates is conducted in a constitutional manner and is not

susceptible to subsequent collateral attack.

At bottom, plaintiffs allege no illegal action by HHS. HHS merely raised a legal

argument before a neutral adjudicator, and any injuries plaintiffs have suffered is

attributable to the fact that the neutral adjudicator concluded the argument might be

meritorious. These allegations, taken as true, fail to state a cognizable due process

violation.

---

[9] The employee further asserted that normal administrative forfeiture principles were inapplicable to structural constitutional claims, including Appointments Clause claims. Reply Brief for Petitioner Elfina McIntosh at 13-14, *McIntosh*, No. 19-2454. While the government believes this argument to be incorrect, there is legitimate cause for concern that a court might hold otherwise. *Cf. Carr v. Saul*, 141 S. Ct. 1352 (2021) (holding that Appointments Clause challenges to Social Security Administration ALJs need not be preserved administratively and can be raised for the first time in court).

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

EREK L. BARRON
   *United States Attorney*

MARK B. STERN
JOSHUA M. SALZMAN
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7258*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 532-4747*

March 2022

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,299 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Salzman*
Joshua M. Salzman

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Joshua M. Salzman*
Joshua M. Salzman